UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BOARD OF TRUSTEES, SHEET METAL WORKERS' NATIONAL PENSION FUND, | ) ) ) ) ) | CASE NO. 5:12-cv-2738 |
| PLAINTIFF, | ) ) | JUDGE SARA LIOI |
| vs. | ) ) | ORDER AND OPINION |
| COURTAD, INC., | ) ) ) | |
| DEFENDANT. | ) | |

This matter is before the Court on defendant's motion for judgment on the pleadings. (Doc. No. 27.) Plaintiff has filed a memorandum in opposition (Doc. No. 30), and defendant has filed a reply. (Doc. No. 33.)[1]

I.   FACTUAL AND PROCEDURAL BACKGROUND

Prior to May 1, 2004, Sheet Metal Workers' International Association Local Union No. 33 ("the union") represented employees of Courtad Construction Systems, Inc. ("Courtad Construction"), a company owned by Dennis Courtad, for purposes of collective bargaining. (Compl., Doc. No. 1 at ¶ 10.) As part of the collective bargaining agreement between

---

[1] The Court ordered briefing on the issue of ERISA preemption, and the parties complied. (Doc. Nos. 38, 39, 40, 41.) After reviewing the briefing, the Court concludes that plaintiff's claim is not preempted. As pointed out by both parties, this is a breach of contract claim involving state law alone. Plaintiff is only seeking amounts due, plus interest and fees, under the Second Settlement Agreement, which, without referencing an ERISA plan, provides for the payment of $125,048.59. (Doc. No. 1-2 at 14-15.) *See Goldman v. BCBSM Found.*, 841 F. Supp. 2d 1021, 1028 (E.D. Mich. 2012) ("to the extent [plaintiff] is claiming a breach of promises contained only in the settlement agreement, the claim could potentially go forward"); *see also Tarn v. Unilever U.S., Inc.*, No. 12-CV-5577 CCC-JAD, 2013 WL 2359487, at *5 (D.N.J. May 29, 2013) (ERISA preemption of settlement agreements requires careful analysis whether the settlement agreement created an obligation independent of the entitlement to benefits under ERISA).

Courtad Construction and the union, Courtad Construction contributed to the Sheet Metal Workers' National Pension Fund ("the Fund" or "plaintiff"). (*Id.* at ¶ 11.) On May 1, 2004, Courtad Construction "ceased to have an obligation to contribute to the Fund, thereby withdrawing from the Fund in a statutory 'complete withdrawal' as defined in Section 4203 of [the Employee Retirement Income Security Act (ERISA)], 29 U.S.C. § 1383." (*Id.* at ¶ 12.)

The Fund notified Courtad Construction that it owed $141,580.54 in withdrawal liability, with the first quarterly installment due by August 6, 2005. (*Id.* at ¶ 14.) On January 26, 2006, after Courtad Construction failed to make any payments, the Fund filed a lawsuit against Courtad Construction in the United States District Court for the Eastern District of Virginia. (*Id.* at ¶ 16; *see id* at ¶ 15.) Plaintiff and Courtad Construction entered into the First Settlement Agreement on March 27, 2007, in which Courtad Construction agreed to pay the Fund $140,000, with interest, payable in thirteen quarterly installments. (*Id.* at ¶¶ 18-19.) On July 26, 2007, Courtad Construction dissolved. (*Id.* at ¶ 20.)

Courtad, Inc., which was incorporated on June 30, 2003, made four of the thirteen payments under the First Settlement Agreement on behalf of Courtad Construction, with the fifth check thrice returned unpaid due to insufficient funds. (*Id.* at ¶¶ 9, 21-22.)

On June 5, 2008, the Fund again brought suit to collect the remaining withdrawal liability, naming as defendants Courtad Construction, Courtad, Inc., and Dennis Courtad. (*Id.* at ¶ 24.) Courtad Construction and Dennis Courtad entered into the Second Settlement Agreement with the Fund on July 11, 2008, and subsequently granted a consent judgment to the Fund for the remaining withdrawal liability on July 22, 2008. (*Id.* at ¶ 25.) Also on July 22, the Fund dismissed its claims against Courtad, Inc. (*Id.* at ¶ 24.) The Second Settlement Agreement called

for eight payments beginning on August 2, 2008, and totaling $125,048.59, none of which were ever paid to the Fund. (*Id*. at ¶¶ 26, 28, 29.)

On November 2, 2012, the Fund filed the instant lawsuit, naming Courtad, Inc. as the sole defendant. It seeks the $125,048.59 due under the Second Settlement Agreement, plus interest, under a theory of alter ego liability. The Fund claims that Courtad Inc., is the alter ego and mere continuation of Courtad Construction, who breached the Second Settlement Agreement. (*Id*. at ¶¶ 30-44.)

Courtad, Inc. filed a motion for judgment on the pleadings. (Doc. No. 27.) First, defendant claims that the Fund did not properly plead a breach of contract claim because it did not allege that defendant was a party to the Second Settlement Agreement. (*Id*. at 238.) Second, it argues that the Fund's alter ego theory of liability fails as a matter of law because Ohio does not recognize reverse triangular corporate veil piercing, nor does it hold sister companies liable for each other's debts. (*Id*. at 239-40.) Third, defendant notes that fraud is an essential element of veil piercing under Ohio law, and the Fund did not plead fraud with particularity. (*Id*. at 241-42.)

In its opposition, the Fund claims that Ohio law on alter ego liability does not apply to this case; instead, federal common law applies. (Doc. No. 30 at 250-51.) Under federal common law, alter ego liability exists when the new employer is, as plaintiff suggests defendant is here, a disguised continuance of the old employer. (*Id*. at 254.)

II.     STANDARD OF REVIEW

Under Rule 12(c), a party may move for judgment on the pleadings any time after the pleadings are closed but early enough not to delay trial. Fed. R. Civ. P. 12(c). The standard of review for a motion for judgment on the pleadings is the same as for a motion to dismiss for

failure to state a claim for relief under Rule 12(b)(6). *E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001) (citing *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998)). To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint must plead facts sufficient to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L.Ed. 2d 929 (2007). Although this pleading standard does not require great detail, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level[.]" *Id*. at 555 (citing authorities).

"'For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment.'" *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (quoting *S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973)). The court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). "The motion is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991) (citation omitted).

In ruling on a Rule 12(c) motion, the court considers all available pleadings, including the complaint and the answer. *See* Fed. R. Civ. P. 12(c). "The court can also consider: (1) any documents attached to, incorporated by, or referred to in the pleadings; (2) documents attached to the motion for judgment on the pleadings that are referred to in the complaint and are central to the plaintiff's allegations, even if not explicitly incorporated by reference; (3) public

records; and (4) matters of which the court may take judicial notice." *Dudek v. Thomas & Thomas Attorneys & Counselors at Law, LLC*, 702 F. Supp. 2d 826, 832 (N.D. Ohio 2010) (citations omitted).

III. LAW AND ANALYSIS

Plaintiff argues that Supreme Court precedent mandates applying federal common law to this case. Federal common law—"the judicial 'creation' of a special federal rule of decision[]"—applies in only a "few" or "restricted" cases. *Atherton v. Fed. Deposit Ins. Corp.*, 519 U.S. 213, 218, 117 S. Ct. 666, 136 L. Ed. 2d 656 (1997) (citations omitted). For example, "the existence of related federal statutes [does not] automatically show that Congress intended courts to create federal common-law rules[.]" *Id*. To justify applying federal common law, a "significant conflict between some federal policy or interest and the use of state law" "is normally a 'precondition.'" *Id*. (quoting *O'Melveny & Myers v. Fed. Deposit Ins. Corp.*, 512 U.S. 79, 87, 114 S. Ct. 2048, 129 L. Ed. 2d 67 (1994)).

Federal common law has found a strong foothold in labor and ERISA cases, which require national uniform rules. *See Mickowski v. Visi-Trak Worldwide, LLC*, 415 F.3d 501, 512 (6th Cir. 2005). In these cases, federal, or relaxed, alter ego doctrine may be used in two main types of circumstances: (1) when a new employer continues the operations of an old employer as a "disguised continuance of the old employer[]" and (2) when coexisting employers performing the same work "are in fact one business, separated only in form." *N.L.R.B. v. Fullerton Transfer & Storage Ltd., Inc.*, 910 F.2d 331, 336 (6th Cir. 1990) (citations and quotations marks omitted). If such circumstances exist, courts consider whether the businesses have "substantially identical management, business, purpose, operation, equipment, customers,

supervision, and ownership[,]" to determine whether one employer is the alter ego of another. *Id*. While not a prerequisite to application of the federal alter ego doctrine, intent to evade preexisting obligations under labor law or ERISA is the doctrine's focus and purpose. *See Trs. of Detroit Carpenters Fringe Benefit Funds v. Indus. Contracting, LLC*, 581 F.3d 313, 318 (6th Cir. 2009) (citations and quotation marks omitted).

Cases cited by the parties and located by the Court in its research apply federal alter ego doctrine only to *federal causes of action* under ERISA or federal labor statutes. *See Yolton v. El Paso Tenn. Pipeline Co.*, 435 F.3d 571, 587 (6th Cir. 2006) (applying federal alter ego doctrine to LMRA and ERISA claims); *Local 134 Bd. of Trs. of the Toledo Roofers Pension Plan v. Enter. Roofing & Sheet Metal Co.*, No. 3:10CV1869, 2013 WL 2425135 (N.D. Ohio June 3, 2013) (applying federal alter ego doctrine to ERISA withdrawal liability claims); *Belgray, Inc. v. Sw. Ohio Reg'l Council of Carpenters Pension Plan & Trust*, No. 1:12-cv-668, 2013 WL 1915267, at *3 (S.D. Ohio May 8, 2013) (same); *see also Moriarty v. Svec*, 164 F.3d 323, 329 (7th Cir. 1998) (applying federal common law of successor liability to Section 515 claim under ERISA). Conversely, in a case in which pension benefits "[were] very much at issue," though "none of the [p]laintiffs' claims were brought under federal law, much less ERISA[,]" a court concluded that the federal alter ego doctrine was inappropriate and inapplicable. *Corrigan v. USX Corp.*, No. 1:03 CV 1835, 2005 WL 2621981, at *10 (N.D. Ohio Oct. 14, 2005).

Outside of labor law or ERISA claims, courts tend not to supplant state corporate liability doctrine with federal common law. For example, in *Whelco Indus., Ltd. v. United States*, 503 F. Supp. 2d 906 (N.D. Ohio 2007), plaintiff acquired assets from a company in receivership, then attempted to remove or invalidate federal tax liens on those assets in a quiet title action.

Citing "[t]ax collection unimpaired by inconsistent state doctrines" as a vital federal interest, the court determined that federal successor liability law applied. *Id*. at 911. The Fund cited *Whelco*, a non-labor and non-ERISA case, in support of applying federal common law in this case. What the Fund neglected to note, however, is that the court explicitly repudiated the above portion of its decision in an opinion altering its judgment. *See Whelco Indus., Ltd. v. United States*, 526 F. Supp. 2d 819 (N.D. Ohio 2007). Emphasizing that federal common law relative to corporate liability is largely "isolated" to labor law and ERISA, the court concluded that it did not apply in a quiet title action, even one implicating enforcement of the federal tax code. *Id.* at 826-27. As an example of this "isolation," the court noted that the Sixth Circuit applied state law in lieu of federal successor liability in a CERCLA case. *Id*. at 826 (citing *City Mgmt. Corp. v. U.S. Chem. Co., Inc.*, 43 F.3d 244, 250 (6th Cir. 1994)).

Similarly, in the patent judgment enforcement context, a more expansive federal common law doctrine of successor liability—substantial continuity—did not displace state successor liability law—mere continuation. *Mickowski*, 415 F.3d at 512. According to the Sixth Circuit, "the mere fact that the 'substantial continuity' test of federal common law is more encompassing than the 'mere continuation' test of state common law does not demonstrate a 'significant conflict between some federal policy or interest and the use of state law.'" *Id*. (quoting *Atherton*, 519 U.S. at 218). Instead, plaintiff must show "a federal policy or interest in extending the substantial continuity test" to the context presented. *Id*. In *Mickowski*, "an asserted need for absolute uniformity in the collection of patent judgments," unlike labor law and ERISA, did not suffice. *Id*.

This is not a labor law case. This is not an ERISA case. As plaintiff has argued,

7

this state-law breach of contract claim is "clearly [] independent of the duties under ERISA." (Doc. No. 39 at 330.) The cases cited above that apply federal alter ego doctrine to labor law claims and ERISA claims do not control this case, which does not contain a federal cause of action.

Disregarding the smoke and mirrors of the Fund's repeated references to ERISA, the Court's inquiry is whether the federal common law doctrine of alter ego liability applies to a state law claim for breach of contract. It does not. Recall that the purpose and focus of federal alter ego liability is to prevent employers from evading preexisting obligations under labor law or ERISA. Plaintiff candidly admits that defendant bears no such obligations, and its sole obligations arise from the Second Settlement Agreement, a contract governed by state law. *See Holmes v. Potter*, 552 F.3d 536, 539 (7th Cir. 2008) ("A settlement of a federal claim is enforced just like any other contract under the state law of contract.") (citation and quotation marks omitted).

Nor can plaintiff show a federal policy or interest in extending the alter ego test of federal common law to a state law claim for breach of a settlement agreement. Plaintiff chose to plead a state law claim, not an ERISA or labor law claim. That an ERISA cause of action differs from a state law cause of action does not imperil the federal policy behind ERISA. Federal alter ego doctrine cannot be used in this case.

Plaintiff notes that defendant's "arguments about piercing the corporate veil, reverse piercing, reverse triangular piercing, and the purported Ohio rule regarding non-liability between 'sister companies' are inapposite" in this case, in which plaintiff alleges only that the companies are alter egos under federal common law. (Doc. No. 30 at 253.) Plaintiff did not

8

attempt to state a claim for relief using Ohio corporate liability doctrines. Instead, plaintiff sought to state a claim for relief under state contract law by grafting federal alter ego doctrine to it. Because plaintiff did not seek to use Ohio corporate liability doctrines, the Court will not, at this point, judge whether it has stated a claim under those doctrines.

IV.     CONCLUSION

Federal alter ego doctrine does not apply to this case. Yet, the Court cannot determine as a matter of law that plaintiff could not state a valid claim for relief on these facts under other theories of corporate liability. Accordingly, the Court grants plaintiff fourteen (14) days in which to amend its complaint to state a valid and timely claim for relief for breach of the settlement agreement; otherwise, plaintiff's complaint shall be dismissed.

**IT IS SO ORDERED**.

Dated: July 18, 2014

**HONORABLE SARA LIOI
UNITED STATES DISTRICT JUDGE**